# EXHIBIT A2

EMPLOYEE AGREEMENT

This Agreement is made between ABBOTT LABORATORIES, an Illinois corporation, on behalf of itself and its Subsidiaries (as defined below), divisions, units or affiliates thereof (collectively, "ABBOTT"), and the undersigned employee ("EMPLOYEE"). In consideration of the execution of this Agreement, the mutual promises and covenants contained in this Agreement and the employment of EMPLOYEE by ABBOTT, the parties agree as follows:

1. EMPLOYEE acknowledges and agrees that:

    (a) ABBOTT has a legitimate business interest in the protections and restrictions set forth in this Agreement and they are reasonable and necessary for the protection of ABBOTT's Confidential Information (defined below), business goodwill, and the maintenance of a stable and productive workplace for the benefit of ABBOTT and its employees.

    (b) in exchange for signing this Agreement, EMPLOYEE will: (i) learn and have access to ABBOTT's Confidential Information; (ii) have access to and authority to deal with certain customers and other parties upon whom ABBOTT depends for its business dealings; and (iii) have access to training (through on the job experience and otherwise) on ABBOTT's Confidential Information and other means of success.

    (c) EMPLOYEE's promises are necessary because EMPLOYEE's possession of ABBOTT's Confidential Information, business contacts, training, and similar employment benefits gives EMPLOYEE an enhanced ability to cause ABBOTT irreparable harm if EMPLOYEE engaged in unfair competition.

    (d) EMPLOYEE is engaged by ABBOTT in a position of trust and confidence in which EMPLOYEE will use, observe, obtain or have access to Confidential Information and the other information and benefits described above.

    (e) at the time of signing this Agreement, ABBOTT's business is in the development, discovery, production, marketing and sale of global health care and medical research products and solutions, and that the market for such products and solutions is fiercely competitive.

2. As used in this Agreement, the following terms have the meanings specified:

    (a) "ABBOTT Customer" means, during the last twelve (12) months of EMPLOYEE's employment with ABBOTT, any person, corporation or any other commercial organization or entity that EMPLOYEE called upon, dealt with or had direct contact with: (i) for purposes of selling, promoting, or marketing; (ii) regarding the use of an ABBOTT service or product on behalf of ABBOTT; or (iii) that possessed or was provided with Confidential Information.

    (b) "Competing Business" means any person or organization that is engaged in or planning to become engaged in a business that involves a Competing Product.

    (c) "Competing Product" means any product, process, technology, machine, invention or service, either in existence or under development, that has (or will have) the same or similar purpose or use as an existing or developmental product, process, technology, machine, invention or service researched, discovered, developed, manufactured, imported, marketed, sold, offered for sale or used by ABBOTT.

    (d) "Confidential Information" means information received by ABBOTT (or provided to EMPLOYEE while employed by ABBOTT) in any form (tangible or intangible) that is not generally known to the public by proper means, including, but not limited to: (i) all discoveries, inventions, improvements and innovations, whether or not patentable or copyrightable, product designs, methods, processes, techniques, shop practices, formulae, compounds, compositions, organisms, computer software, equipment, research and development data, clinical and pharmacological data, patient data, technical data, marketing, pricing and sales information, customer and prospective customer lists, material sourcing information and lists, business practices, methods and strategies, marketing plans and strategies, buying practices, financial data, operational data, plans and all other know-how, trade secrets, intellectual property and proprietary information; and (ii) information about the business affairs of third

February 2019

parties (including, but not limited to, customers, distributors, suppliers, acquisition targets, joint ventures, and licensing partners) that such third parties provide to ABBOTT in confidence, as well as information received by ABBOTT under an obligation of confidentiality to any third party.

For managerial employees, employees with access to personnel records and data, and employees in ABBOTT's human resources organization, Confidential Information also includes personnel data, including, but not limited to, information obtained by EMPLOYEE in the course of performing EMPLOYEE's job responsibilities, such as employee identity, performance, compensation, and skill.

The presence of non-confidential information in an otherwise confidential compilation of information will not remove the information in its compiled form from the protection of this Agreement. EMPLOYEE acknowledges and agrees that items of Confidential Information are ABBOTT's valuable assets and have economic value, actual or potential, because they are not generally known by the public or others who could use them to their own economic benefit or to the competitive disadvantage of ABBOTT.

(e) "Covered Supplier" means an ABBOTT supplier (person, corporation, or any other commercial organization or entity) that EMPLOYEE or a person acting under EMPLOYEE's supervision had significant business-related contact or dealings with on behalf of ABBOTT, or was provided Confidential Information about, during the last two years of EMPLOYEE's employment with ABBOTT.

(f) "Subsidiary" means a corporation or any other commercial organization or entity, and any branch or office of any of the foregoing, fifty percent (50%) or more of the assets or voting securities of which is owned or controlled, directly or indirectly, by ABBOTT.

3. **No Conflicting Obligations.** EMPLOYEE represents and warrants to ABBOTT that EMPLOYEE is not currently, or will not be as of the start date of EMPLOYEE's employment with ABBOTT, subject to a non-competition, confidentiality or other such agreement with a current or former employer or other entity that prohibits or restricts EMPLOYEE from working for ABBOTT, or performing the services that ABBOTT would like EMPLOYEE to perform. EMPLOYEE further certifies that EMPLOYEE has returned or destroyed all property, data, and documents, whether in electronic, paper, or other form, of any former employer, customer, or other third party and has not retained any copies in any form. EMPLOYEE acknowledges and agrees that ABBOTT has hired EMPLOYEE because of EMPLOYEE's general skills and abilities and not because of EMPLOYEE's possession, if any, of any former employer's, customer's, or other third party's confidential or proprietary information. EMPLOYEE agrees: (a) not to disclose or use, directly or indirectly, in furtherance of EMPLOYEE's employment with ABBOTT, any confidential or proprietary information, whether in electronic, paper, or other form, that EMPLOYEE obtained through EMPLOYEE's employment with any previous employer(s) or relationship with any previous customer(s) or third party arrangement(s); and (b) to comply with and abide by any unexpired confidentiality obligations with such previous employers, customers and third parties that EMPLOYEE has at the time of hire by ABBOTT.

4. **Duties.** EMPLOYEE will comply with and discharge EMPLOYEE's duties at all times in accordance with any and all ABBOTT policies, as well as [ABBOTT's Code of Business Conduct](#).

5. **Electronic Media & Systems.** EMPLOYEE acknowledges and agrees that any use of ABBOTT's electronic media and systems (including, but not limited to, phones, smartphones, computers, tablets, voicemail, email, or "cloud" services), may be monitored without notice, in accordance with ABBOTT policies and local laws. Subject to the same policies and local laws, ABBOTT may also access and delete information and applications from ABBOTT electronic media, including personal information.

6. **Return of ABBOTT Property.** Prior to terminating employment from ABBOTT (or otherwise upon request by ABBOTT), EMPLOYEE shall return all ABBOTT property, and shall not retain any copies, reproductions, abstracts or summaries of the property. ABBOTT property includes, but is not limited to, all identification badges, passwords, access cards or codes, keys, automobiles, computers, telephones or other equipment, memoranda, notes, records, reports, files or other documents, photographs, drawings, plans, papers, computer software, compounds, customer and client lists, products/inventory and materials, as well as ABBOTT intellectual property made or compiled by or made available to EMPLOYEE during the course

of employment with ABBOTT, and any copies, summaries or abstracts thereof, whether in electronic, paper or other form and whether or not they contain Confidential Information, as well as any telephone numbers maintained by ABBOTT.

7. **Assignment and Ownership of Created Works.**

   (a) **Invention Ownership.** EMPLOYEE acknowledges and agrees that all discoveries, inventions, improvements, software, innovations, trademarks, trade dress, Internet domain names, or other such intellectual property, whether or not patentable, copyrightable, or registerable (including all data and records pertaining thereto) which EMPLOYEE may invent, discover, originate, or conceive during the term of employment with ABBOTT, or which may otherwise arise out of or result from Confidential Information obtained, provided or otherwise acquired, either directly or indirectly, by EMPLOYEE in connection with EMPLOYEE's employment with ABBOTT, shall be the sole and exclusive property of ABBOTT.  EMPLOYEE shall promptly and fully disclose each and all such discoveries, inventions, improvements, software, innovations, trademarks, trade dress, Internet domain names, or other such intellectual property to ABBOTT.

   (b) **Invention Assignment.** EMPLOYEE: (i) agrees to and hereby assigns to ABBOTT EMPLOYEE's entire right, title, and interest throughout the world to any of the discoveries, inventions, improvements, software, innovations, trademarks, trade dress, Internet domain names, and other such intellectual property described in Section 7(a) of this Agreement and any related U.S. or foreign counterparts, including patents, patent applications, copyrights and registrations; (ii) shall execute any instruments considered necessary by ABBOTT to convey or perfect ABBOTT's ownership thereof; and (iii) shall assist ABBOTT in obtaining, defending and enforcing its rights therein.

   EMPLOYEE grants ABBOTT the right and power to execute any such instruments on behalf of EMPLOYEE to the extent necessary to obtain, defend and enforce such rights in the event ABBOTT is otherwise unable to secure EMPLOYEE's signature after reasonable effort by ABBOTT.  ABBOTT shall bear all expenses it authorizes be incurred in connection with such activity and shall pay to EMPLOYEE reasonable compensation for any reasonable amount of time spent by EMPLOYEE performing such duties at the request of ABBOTT after termination of employment.  As used herein, "reasonable compensation" shall be the U.S. dollar equivalent of the hourly rate EMPLOYEE was paid at the time of EMPLOYEE's termination of employment from ABBOTT. In addition, EMPLOYEE shall maintain in confidence and not use, except as expressly authorized in writing in advance by ABBOTT's Chief Patent Counsel or his/her designee, any information, including without limitation documents and communications, disclosed to EMPLOYEE after EMPLOYEE's termination of employment with ABBOTT, in connection with EMPLOYEE's obligations hereunder.

   (c) **Inventions Developed on EMPLOYEE's Own Time.**  The assignments of rights in Sections 7(a) and 7(b) of this Agreement shall not apply to an invention excluded under any applicable law, including, but not limited to Cal. Lab. Code. § 2870, that the EMPLOYEE developed entirely on his/her own time without using ABBOTT's equipment, supplies, facilities, or trade secret information except for those inventions that either:  (i) relate at the time of concept or reduction to practice of the invention to ABBOTT's business, or ABBOTT'S actual or demonstrably anticipated research or development; or (ii) result from any work performed by EMPLOYEE for ABBOTT. If EMPLOYEE has any discoveries, inventions, improvements, software, innovations, trademarks, trade dress, Internet domain names, or other such intellectual property made by EMPLOYEE prior to EMPLOYEE's employment with ABBOTT, which are owned or controlled by EMPLOYEE or another party, but relate to ABBOTT's business or products (collectively referred to as "Prior Developments), EMPLOYEE must complete and provide Exhibit A to hrservicecenter@abbott.com at commencement of EMPLOYEE's employment; provided, however, if no such list is provided to hrservicecenter@abbott.com at that time, EMPLOYEE represents that no such Prior Developments exist.  If in the course of EMPLOYEE's employment with ABBOTT, EMPLOYEE incorporates into an ABBOTT product, process or system a Prior Development, EMPLOYEE grants to ABBOTT a nonexclusive, royalty-free, perpetual, irrevocable, worldwide, transferable, and sub licensable license to make, have made, use, sell, have sold, modify, distribute, display and import such Prior Development as part of or in connection with such product, process or system.

February 2019

8. **Non-Disclosure of Confidential Information.** EMPLOYEE acknowledges and agrees that EMPLOYEE has no right, title or ownership in Confidential Information unless otherwise expressly granted in writing by ABBOTT's Chief Patent Counsel or his/her designee. EMPLOYEE shall use all best efforts to protect the secrecy and confidentiality of all Confidential Information, including, as applicable, such efforts and measures as set forth in ABBOTT policies, procedures and guidelines.  EMPLOYEE shall not, during the term of employment with ABBOTT or thereafter, use or disclose, or assist in the disclosure to or use by others, directly or indirectly, any Confidential Information, except as required and authorized in the scope of EMPLOYEE's job responsibilities and in the furtherance of ABBOTT's business (to the extent consistent with applicable confidentiality obligations between ABBOTT and third parties).  EMPLOYEE acknowledges and agrees that prior written authorization by ABBOTT is required in accordance with ABBOTT policy before Confidential Information is submitted by EMPLOYEE for possible publication or dissemination.  EMPLOYEE acknowledges and agrees that the relationship of EMPLOYEE to ABBOTT with respect to Confidential Information shall be fiduciary in nature.

   Notwithstanding the foregoing, nothing in this Agreement shall be construed to interfere with EMPLOYEE's right to engage in any activity protected by applicable law, including the reporting of a violation of law, or to prohibit a disclosure of information that is compelled by law; provided, however, that to the extent allowed by law and possible under the circumstances, ABBOTT requests that EMPLOYEE give as much written notice as possible to ABBOTT's General Counsel.  In addition, EMPLOYEE shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that: (a) is made: (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such a filing is made under seal.

9. **Non-Competition.** EMPLOYEE shall not, during EMPLOYEE's employment and twelve (12) months after EMPLOYEE's termination for any reason, in each country in which ABBOTT conducts business, except as expressly authorized in writing in advance by the ABBOTT Divisional Vice President & Associate General Counsel, Litigation or his/her designee:

   (a) participate in, manage, supervise, or provide services to a Competing Business: (i) that are the same as or similar in function or purpose to any services EMPLOYEE provided to ABBOTT during the last two years of EMPLOYEE's employment with ABBOTT; or (ii) that are otherwise likely to result in the use or disclosure of Confidential Information, notwithstanding EMPLOYEE's undertaking to the contrary;

   (b) own, finance, control, or hold a material interest in a Competing Business; provided, however, that nothing herein shall prohibit EMPLOYEE from ownership of 2% or less of the publicly traded stock of a Competing Business so long as such ownership is a non-controlling interest, passive in nature (such as through a mutual fund), and EMPLOYEE has no other material involvement with the Competing Business of any kind;

   (c) participate in developing or attempting to develop a Competing Product;

   (d) directly or indirectly, promote or market any Competing Products to any ABBOTT Customer, or solicit any ABBOTT Customer or Covered Supplier for any purpose related to Competing Product; or

   (e) knowingly induce or encourage an ABBOTT Customer or a Covered Supplier to cease, interfere with or reduce business activity conducted with ABBOTT.

   EMPLOYEE agrees and acknowledges that subsections (d) and (e) are reasonably limited in geography by their nature to those places or locations where the ABBOTT Customers and Covered Suppliers are located and do business, and if such geographic limit is insufficient under applicable law, then the restrictions in Section 9 shall be considered limited to the EMPLOYEE's assigned location or territory, which depending on EMPLOYEE's position, could extend to the United States and each additional country where ABBOTT does business.

   Nothing in the foregoing restrictions is intended to prohibit EMPLOYEE from engaging in conduct that is

February 2019

authorized as part of EMPLOYEE's job duties for ABBOTT and is undertaken for ABBOTT's benefit. These restrictions are reasonable and necessary in order to protect ABBOTT's Confidential Information, training, business goodwill, and other legitimate business interests.

Notwithstanding the foregoing, in the event EMPLOYEE is not subject to Illinois law by virtue of this Agreement (and in Sections 9(f)-(h), if EMPLOYEE is subject to the laws of one of the following geographies), then Section 9 is modified accordingly:

(f) **California & North Dakota:** Section 9 shall not apply to EMPLOYEE, but EMPLOYEE shall in all respects remain prohibited from using ABBOTT Customer lists and or any Abbott information that qualifies for trade secret protection to aid in the solicitation of ABBOTT Customers.

(g) **Louisiana:** Section 9 shall be reasonably limited in geography by their nature to those specific parishes within Louisiana and any counties outside of Louisiana in the EMPLOYEE's assigned location or territory, which depending on EMPLOYEE's position, could extend to the United States and each additional country where ABBOTT does business.

(h) **Oklahoma:** Sections 9(a)-(c) shall not apply and Sections 9(d)-(e) shall be further limited to ABBOTT's established customers and the restrictions as to Covered Suppliers shall not apply. An ABBOTT Customer will be presumed established where actual sales or services have occurred or been performed in the preceding year or where there is an active proposal for sales or services pending or being negotiated as of the date EMPLOYEE's employment with ABBOTT ends.

(i) **Puerto Rico:** If during the last twelve (12) months of employment with ABBOTT, EMPLOYEE had no management duties or responsibilities and was engaged exclusively in sales activities, including selling, soliciting the sale, or supporting the sale of ABBOTT products through direct contact with ABBOTT Customers, the geographical limitation provided above does not apply. If during the last twelve (12) months of employment with ABBOTT, EMPLOYEE was not engaged exclusively in sales activities, including selling, soliciting the sale, obtaining orders, or supporting the sale of ABBOTT products through direct contact with ABBOTT Customers, Sections 9(d)-(e) do not apply and the geographical limitation provided above includes Puerto Rico.

10. **Non-Solicitation of Employees.** During EMPLOYEE's employment and for twenty-four (24) months after EMPLOYEE's termination for any reason, EMPLOYEE shall not, directly or indirectly, for EMPLOYEE's benefit or others, solicit or assist in soliciting any ABBOTT employee, independent contractor, or partner about whom EMPLOYEE acquired knowledge through EMPLOYEE's employment with ABBOTT (a "Subject Employee") to work for another organization.

In the event that ABBOTT loses the services of a Subject Employee as a result (in whole or in part) of a violation of this Section that occurs before injunctive relief can be issued, then EMPLOYEE shall pay ABBOTT a partial damage payment equal to 30% of the total compensation (which is understood to include all wages, incentive payments and other bonuses) paid to the Subject Employee whose services were lost by ABBOTT in the preceding year, or 30% of the total compensation to be paid to such employee by his/her new employer, whichever is greater; provided, however, that it is understood that this remedy is not a complete remedy and may only cover a portion of the harm caused by such a breach, and shall be in addition to, and not in lieu of, other relief (including but not limited to injunctive relief that shall remain the primary remedy to secure specific performance, avoid further violations and prevent irreparable harm).

During any time EMPLOYEE is not subject to the laws of Illinois by virtue of this Agreement and instead is subject to the laws of California, Section 10 shall be limited to soliciting a Subject Employee to terminate his/her employment with ABBOTT.

11. **Breach and Remedies.** In the event of EMPLOYEE's breach or threatened breach of any portion of this Agreement, EMPLOYEE acknowledges and agrees that:

(a) EMPLOYEE shall be subject to discipline, up to and including termination.

February 2019

(b) Any equity granted to EMPLOYEE under any ABBOTT incentive stock program or any related agreements shall be subject to immediate forfeiture in accordance with its respective terms.

(c) The restrictive period in Sections 9 (Non-Competition), 10 (Non-Solicitation of Employees) and 13 (Notifications to ABBOTT and New/Potential Employer) shall be extended by the length of time that EMPLOYEE violates any of those section(s).

(d) ABBOTT will face irreparable injury which may not be reasonably possible to calculate in dollar terms, and that in addition to other remedies available, ABBOTT shall be entitled to injunctions enjoining such breach or threatened breach by EMPLOYEE, EMPLOYEE's agents or representatives, or any other persons or entities acting for or with EMPLOYEE.  EMPLOYEE further acknowledges and agrees that in addition to any other rights and remedies, ABBOTT shall be entitled to damages, attorneys' fees and all other costs and expenses reasonably incurred by ABBOTT in enforcing this Agreement.

12. **No Limitation.**  This Agreement shall not limit in any way any "shop right," "fiduciary duty" or other common law or statutory or contractual rights of ABBOTT, in or to any intellectual property or Confidential Information, including without limitation any trade secrets which ABBOTT has or may have by virtue of EMPLOYEE's employment.

13. **Notifications to ABBOTT and New / Potential Employer.**  For twenty-four (24) months following the date of EMPLOYEE's termination from ABBOTT:

    (a) EMPLOYEE shall communicate EMPLOYEE's obligations under this Agreement to each subsequent intended or actual employer, including providing to each such subsequent employer a copy of this Agreement.

    (b) EMPLOYEE shall notify ABBOTT of the name and address of EMPLOYEE's each subsequent intended or actual employer. ABBOTT shall have the right to advise any subsequent employer of EMPLOYEE's obligations hereunder.

    (c) If EMPLOYEE accepts a position with a Competing Business, EMPLOYEE shall provide ABBOTT with the information needed or requested for ABBOTT to conduct a reasonable evaluation of the position as it relates to this Agreement.

    (d) If the scope or applicability of the restrictions in Sections 9 or 10 are unclear to EMPLOYEE, EMPLOYEE shall first seek clarification of the restriction(s) from the Divisional Vice President, Employee Relations, before taking any action which might reasonably be construed as a violation of this Agreement.  EMPLOYEE shall not sue or take other legal action to challenge the application or enforceability of the restrictions in Sections 9 or 10 without first seeking, in writing to the ABBOTT Divisional Vice President & Associate General Counsel, Litigation or his/her designee, to resolve any issue or concern EMPLOYEE has with those restrictions. This Section 13(d) shall apply during EMPLOYEE's employment with ABBOTT and for twenty-four (24) months following the date of EMPLOYEE's termination from ABBOTT.

14. **Modification and Severability.**  If any provision or provisions (or portions thereof) of this Agreement are held to be unreasonable or unenforceable by any court, then the parties acknowledge and agree that a court may modify any unreasonable or unenforceable provision or provisions (or portions thereof) to make it reasonable and enforceable or enforce it only to the extent it is reasonable and enforceable, to the maximum amount allowed by law to protect ABBOTT's legitimate business interests.

    The provisions of this Agreement are severable, and to the extent that any illegal or unenforceable provision of this Agreement cannot be cured by reformation, then such offending portion or language shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and be enforceable.

15. **Choice of Law.**  This Agreement shall be construed, and its enforceability and the relationship of the parties shall be determined, in all respects under the laws of Illinois, without giving effect to conflict of laws.

February 2019

16. **Jurisdiction / Venue.**

    (a) The parties agree to the exclusive jurisdiction of the state and federal courts in Illinois, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and further irrevocably agree that all claims in any such action or proceeding shall be heard and determined in Lake County, Illinois state court or the Northern District of Illinois federal court.  Both parties waive any objection to the laying of venue of any such action or proceeding in any of the Lake County, Illinois state courts or Northern District of Illinois federal courts, as well as any claim that a party may have that any such action or proceeding has been brought in an inconvenient forum.  EMPLOYEE stipulates and consents to Illinois courts' personal jurisdiction and waives the right to object to an Illinois court's jurisdiction.

    (b) To the extent that: (i) any action or proceeding relating to this Agreement arises in the State of California, (ii) EMPLOYEE primarily resides and works in the State of California; and (iii) it is determined by a court of law that Section 16(a) is unenforceable, then all actions or proceedings relating to this Agreement may nevertheless be tried and litigated in the state or federal courts located in Lake County, Illinois state court or the Northern District of Illinois federal court. EMPLOYEE agrees to submit to the jurisdiction of these courts for the purpose of any such action or proceeding, and this submission cannot be revoked.

17. **Statute of Limitations.**  EMPLOYEE acknowledges and agrees that any action or legal proceeding must be brought within twelve (12) months from the date of the event forming the basis for EMPLOYEE's action or legal proceeding, or within the shortest limit of time permitted under applicable law if such period is greater than one year, or the claim shall be deemed untimely.

18. **Assignment.**  ABBOTT may assign this Agreement to an affiliate or successor, which will be binding upon and inure to the benefit of ABBOTT and its assigns and successors.  This Agreement is personal to EMPLOYEE and may not be assigned by EMPLOYEE.  This Agreement will be binding upon EMPLOYEE, EMPLOYEE's heirs and personal and legal representatives.

19. **Waiver.**  The failure or refusal by ABBOTT either to insist upon the strict performance of any provision of this Agreement or to exercise any right in any one or more instances or circumstances shall not be construed as a waiver or relinquishment of such provision or right, nor shall such failure or refusal be deemed a custom or practice contrary to such provision or right of this Agreement. ABBOTT has the right to waive the enforcement of any provision(s) in this Agreement, as well as modify, change, clarify or interpret the Agreement in its sole discretion but such waiver must be in writing and signed by an ABBOTT Corporate Officer or his/her delegate to be valid.

20. **Entire Agreement.**  This Agreement is the sole, entire, and complete agreement of the parties relating to the subject matter hereof, replaces and supersedes all other prior versions and representations, and shall apply, notwithstanding that EMPLOYEE's employment may include significant changes in responsibilities, location, and other terms and conditions, including nature or scope of Confidential Information to which EMPLOYEE has access; provided, however, that (a) nothing in this Agreement replaces or supersedes or otherwise affects any term or provision of any ABBOTT benefit plan, incentive stock program or any related agreements; and (b) should any restrictive covenant in this Agreement be deemed unenforceable by a court of law, then the next most recently in effect restrictive covenant shall not be superseded and will remain in full force and effect. No statements, promises, or representations have been made by any party to the other, or relied upon, other than as expressly provided in this Agreement with respect to the subject matter of the Agreement.  The obligations under this Agreement shall survive termination of employment.

February 2019

21. **At Will Employment.  EMPLOYEE is employed at will, meaning either ABBOTT or EMPLOYEE may terminate the employment relationship at any time, with or without notice, and for any reason or no reason at all.  Any modifications to the "at will" status of the employment relationship between the parties must be set forth in a separate written agreement executed by both EMPLOYEE and an ABBOTT Corporate Officer or his/her delegate.**

22. **Execution in Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original for purposes of execution and proof of this Agreement whether the signature is faxed, photocopied, or in PDF or electronic format.

23. **Notice and Voluntary.**  EMPLOYEE acknowledges and agrees that EMPLOYEE has been provided with sufficient advance notice of this Agreement prior to being required to execute it, and has had an opportunity to seek the advice of legal counsel before entering into this Agreement.  The parties enter into this Agreement voluntarily and will not claim it was entered into under coercion or duress, or without full knowledge of its terms. EMPLOYEE understands that this is a legally binding document.

_____
EMPLOYEE Signature

February 2019

**EXHIBIT A**

LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP*

| Invention in which Employee has a Right, Title or Interest | Effective Date (the Date Interest in the Invention was Acquired) | Identifying Number or Brief Description |
|---|---|---|
|   |   |   |

*(Employee to initial below as applicable)*
\_\_\_\_ Additional sheets attached

| | |
|---|---|
| EMPLOYEE Printed Name | EMPLOYEE Signature & Date |

\* If EMPLOYEE does not submit a properly signed/dated Exhibit A to hrservicecenter@abbott.com at the time EMPLOYEE commences employment at Abbott, EMPLOYEE agrees that s/he has no Prior Developments.

February 2019